J-A10014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WALTER SAWYER | |
| Appellant | No. 1530 MDA 2014 |

Appeal from the Judgment of Sentence April 22, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004317-2013

BEFORE:  GANTMAN, P.J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 22, 2015**

Appellant, Walter Sawyer, appeals *pro se* from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury trial convictions for kidnapping, unlawful contact with a minor, and false identification to law enforcement authorities.[1]  We affirm the convictions, but vacate the judgment of sentence and remand for resentencing.

The relevant facts and procedural history of this appeal are as follows. On December 15, 2012, sixteen-year-old B.B. ("Victim") was traveling by bus from Indianapolis to Hazleton.  During a stop in Harrisburg, Victim left the bus station to smoke a cigarette.  Appellant approached Victim and

---

[1] 18 Pa.C.S.A. §§ 2901, 6318, and 4914, respectively.

started a conversation. Victim told Appellant she was hungry, and Appellant offered to drive Victim to a gas station where she could buy food. Victim accepted the offer and entered Appellant's vehicle.

Instead of driving to a gas station, Appellant took Victim to a secluded parking lot under a nearby bridge. Appellant told Victim to have sex with him, or else he would not drive her back to the station in time for Victim to catch the bus to Hazleton. Believing she had no other choice, Victim climbed into the backseat. As Appellant began to pull down Victim's pants, State Capitol Police Sergeant Michael Schmidt encountered Appellant's vehicle during a routine patrol of the area. Sergeant Schmidt questioned Victim, who informed the sergeant of Appellant's attempt to coerce her into having sex. Sergeant Schmidt also questioned Appellant, who provided the birth certificate and Social Security card of another individual as his own identification.

The Commonwealth filed a criminal complaint against Appellant on May 9, 2013.[2] Following trial, a jury convicted Appellant of kidnapping, unlawful contact with a minor, and false identification. The jury acquitted

---

[2] At the time of the incident with Victim, Appellant had escaped from a halfway house. The Commonwealth charged Appellant with escape at No. 695 of 2013, and Appellant pled guilty to the escape charge on March 25, 2013. Due to the ongoing investigation into Appellant's escape case, the Commonwealth did not immediately file the criminal complaint for the crimes against Victim. (**See** Commonwealth's Answer to Appellant's Amended Post-Sentence Motion, filed 7/30/14, at 2.)

Appellant of unlawful restraint, false imprisonment, and attempted indecent assault. Prior to sentencing, the Commonwealth provided notice of intent to seek a mandatory minimum sentence under the "three strikes" provision of 42 Pa.C.S.A. § 9714(a)(2). On April 22, 2014, the court sentenced Appellant to twenty-five (25) to fifty (50) years' imprisonment for the kidnapping conviction. The court imposed the sentence pursuant to Section 9714(a)(2). For the unlawful contact with a minor conviction, the court imposed a concurrent term of five (5) to ten (10) years' imprisonment. For the false identification conviction, the court imposed a concurrent term of one (1) to two (2) years' imprisonment. The court ordered all sentences to run concurrent with any sentences Appellant was already serving, including the sentence for the escape conviction.

Appellant timely filed counseled post-sentence motions on May 2, 2014, arguing that the court imposed an illegal sentence above the statutory maximum for the false identification conviction. Appellant also claimed the verdict was against the weight of the evidence. Before the court ruled on the counseled post-sentence motions, Appellant filed a request to proceed *pro se*. On June 16, 2014, the court conducted a hearing, pursuant to **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998). Following the hearing, the court determined Appellant's waiver of counsel was knowing, voluntary, and intelligent, and it permitted trial counsel to withdraw. Also on June 16, 2014, the court issued an amended sentencing order, modifying

Appellant's sentence for the false identification conviction to six (6) to twelve (12) months' imprisonment. The court did not alter Appellant's remaining sentences, and it did not rule on the weight claim from the counseled post-sentence motion.

On June 24, 2014, Appellant filed a *pro se* amendment to his counseled post-sentence motions. In the *pro se* amendment, Appellant included claims regarding subject matter jurisdiction, due process violations, defects in the pretrial proceedings and charging instruments, Pa.R.Crim.P. 600 violations, the legality of the mandatory minimum sentence, and the sufficiency of the evidence supporting the convictions. On August 6, 2014, the court granted Appellant's post-sentence motions in part. Specifically, the court determined that Appellant had not committed two prior crimes of violence to support the imposition of a "third strike" sentence under Section 9714(a)(2); instead, Appellant had committed only one prior crime of violence. Thus, the court vacated Appellant's sentence for kidnapping and resentenced him to a mandatory minimum term of one hundred twenty (120) months' imprisonment for a "second strike" conviction, pursuant to Section 9714(a)(1).[3] The court did not alter Appellant's remaining

_____

[3] In the trial court's opinion and order granting the post-sentence motions in part, the court initially stated it had resentenced Appellant "pursuant to [Section] 9714(a) to a term of 120-**240** months of incarceration in a State Correctional Institute at Count 1." (Trial Court Opinion and Order, filed August 6, 2014, at 13) (emphasis added). Nevertheless, the court later
*(Footnote Continued Next Page)*

- 4 -

sentences, and it denied relief on all other claims raised in the counseled and *pro se* post-sentence motions.

Appellant timely filed a *pro se* notice of appeal on August 20, 2014. On September 18, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a *pro se* Rule 1925(b) statement on September 22, 2014.

Appellant raises six issues for our review:

> WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE VERDICTS FOR KIDNAPPING AND UNLAWFUL CONTACT WERE NOT CONTRARY TO THE WEIGHT OF THE EVIDENCE SO AS TO SHOCK ONE'S SENSE OF JUSTICE, WHERE THE NECESSARY UNDERLYING OFFENSES WERE NOT PROVEN.
>
> WHETHER THE TRIAL COURT ERRED IN FINDING THAT IT DID NOT LACK SUBJECT MATTER JURISDICTION WHERE APPELLANT WAS NEVER FORMALLY CHARGED VIA AN ARRAIGNMENT IN ACCORDANCE WITH THE PENNSYLVANIA RULES OF CRIMINAL PROCEDURE.
>
> WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE COMMONWEALTH COULD PRESENT CHARGES NOT PRESENTED AT THE PRELIMINARY HEARING NOR AMENDED BY FORMAL ARRAIGNMENT PRIOR TO TRIAL.

*(Footnote Continued)* _____

states it resentenced Appellant "to a term of 120-**140** months [of] incarceration in a State Correctional Institute at Count 1." (***Id.*** at 14) (emphasis added). Further, the relevant docket entry states: "The court…resentences [Appellant] to a term of 120-**140** months [of] incarceration in a State Correctional Institute at Count 1." (Criminal Docket Entries, printed 10/10/14, at 9) (emphasis added). The court's opinion and order and the docket entry are the only two writings in the record, which memorialize the amended judgment of sentence.

WHETHER THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NO VIOLATION OF PA.R.CRIM.P. 600.

WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE COMMONWEALTH'S DELAY IN BRINGING CHARGES AGAINST APPELLANT DID NOT DENY HIM HIS DUE PROCESS RIGHTS AND PERMIT A CONVICTION WHERE APPELLANT IS IN FACT INNOCENT.

WHILE THE COURT FOUND THAT IT HAD ILLEGALLY SENTENCED APPELLANT UNDER THE RECIDIVIST STATUTE AND PROPERLY VACATED SAID ILLEGAL SENTENCE, THE TRIAL COURT AGAIN ILLEGALLY SENTENCED APPELLANT UNDER THE RECIDIVIST STATUTE. AS SUCH, THE QUESTION IS WHETHER THE TRIAL COURT ERRED IN RESENTENCING APPELLANT UNDER THE RECIDIVIST STATUTE....

(Appellant's Brief at vi-vii).

In his first issue, Appellant asserts that the jury convicted him of kidnapping and unlawful contact with a minor, but it acquitted him of attempted indecent assault. Appellant insists the jury's verdict was inconsistent, because kidnapping and unlawful contact with a minor include the same statutory elements as attempted indecent assault. On this basis, Appellant concludes the trial court should have overturned his kidnapping and unlawful contact with a minor convictions. Appellant, however, failed to include this claim in his Rule 1925(b) statement.[4] Consequently, the claim is

_____

[4] In his Rule 1925(b) statement, Appellant included a boilerplate challenge to the weight of the evidence. Likewise, in the statement of questions presented, Appellant also couched this issue in terms of weight of the evidence. Significantly, claiming "the verdict is contrary to the weight of the
*(Footnote Continued Next Page)*

waived. *See Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005) (stating general rule that any issue not included in Rule 1925(b) statement is waived for purposes of appellate review).

In his second, third, fourth, and fifth issues, Appellant challenges the trial court's subject matter jurisdiction, alleged due process violations, alleged defects in the pretrial proceedings, and a purported Rule 600 violation. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Deborah E. Curcillo, we conclude Appellant's second, third, fourth, and fifth issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion and Order at 8-12) (finding: **(2)−(3)** Court of Common Pleas has subject matter jurisdiction over all cases arising under Crimes Code; at preliminary hearing, Appellant received copy of criminal complaint, notice of right to counsel, notice of right to waive counsel, notice of right to preliminary hearing, and notice of right to have bail set; Appellant was not unlawfully detained or deprived of any rights; Commonwealth established *prima facie* case against

*(Footnote Continued)* ────────────

evidence concedes that there is sufficient evidence to sustain the verdict…." *Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa.Super. 2011), *appeal denied*, 615 Pa. 791, 44 A.3d 1161 (2012). Here, Appellant's proposed argument actually implicates the sufficiency of the evidence rather than its weight. *See Commonwealth v. Miller*, 613 Pa. 584, 588, 35 A.3d 1206, 1208 (2012) (stating inconsistent verdicts "are allowed to stand so long as the evidence is sufficient to support the conviction").

Appellant at preliminary hearing; Commonwealth included unlawful contact with a minor charge in criminal information; Commonwealth is permitted to use criminal information to charge offenses, which are substantially same as or cognate to offenses charged in criminal complaint; here, Commonwealth included kidnapping and attempted indecent assault charges in criminal complaint; kidnapping and attempted indecent assault implicate all essential elements of unlawful contact with minor; thus, unlawful contact with minor was cognate offense and properly charged in criminal information; **(4)** trial occurred within 365 days of Commonwealth filing criminal complaint; no Rule 600 violation actually occurred in Appellant's case; **(5)** regarding Appellant's complaint that Commonwealth's delay in bringing charges resulted in loss of certain surveillance videos, such evidence was *de minimis* and circumstantial where Victim consistently indicated she willingly entered Appellant's vehicle outside bus station; dismissal of charges was not warranted). Therefore, Appellant is not entitled to relief on his second, third, fourth, and fifth issues on the basis of the trial court opinion.[5]

In his sixth issue, Appellant relies on ***Alleyne v. United States***, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), for the proposition that

---

[5] We also note Appellant failed to cite to relevant authority in support of his third and fourth issues. ***See Commonwealth v. Knox***, 50 A.3d 732 (Pa.Super. 2012), *appeal denied*, 620 Pa. 721, 69 A.3d 601 (2013) (reiterating failure to cite to legal authority to support argument results in waiver).

any fact increasing a minimum sentence is an element of the crime that must be submitted to the jury and proven beyond a reasonable doubt. Appellant asserts the jury did not determine the facts triggering the court's sentencing under Section 9714(a), and the court should not have imposed a mandatory minimum sentence. Appellant also argues that the Commonwealth did not initially seek a "second strike" sentence under Section 9714(a)(1); rather, the Commonwealth sought a "third strike" sentence under Section 9714(a)(2). Because the Commonwealth failed to prove the applicability of Section 9714(a)(2), Appellant argues the court should not have imposed **any** sentence under Section 9714(a).

Further, Appellant contends the court's August 6, 2014 order amending the kidnapping sentence imposed a term of one hundred twenty (120) to one hundred forty (140) months' incarceration. Appellant claims the docket entries list an identical sentence of one hundred twenty to one hundred forty months' incarceration. Appellant maintains this sentence is illegal, because the minimum sentence exceeds one-half of the maximum sentence. Appellant's claims challenge the legality of his kidnapping sentence. **See Commonwealth v. Vasquez**, 560 Pa. 381, 744 A.2d 1280 (2000) (stating application of mandatory sentencing provisions implicates legality of sentence); 42 Pa.C.S.A. § 9714(a.1).

"Issues relating to the legality of a sentence are questions of law…." **Commonwealth v. Diamond**, 945 A.2d 252, 256 (Pa.Super. 2008), *appeal*

*denied*, 598 Pa. 755, 955 A.2d 356 (2008). "The defendant or the Commonwealth may appeal as of right the legality of the sentence." 42 Pa.C.S.A. § 9781(a). ***See also Commonwealth v. Edrington***, 780 A.2d 721 (Pa.Super. 2001) (maintaining legality of sentence claims cannot be waived, where reviewing court has proper jurisdiction). When the legality of a sentence is at issue on appeal, our "standard of review over such questions is *de novo* and our scope of review is plenary." ***Diamond, supra*** at 256. "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated…." ***Commonwealth v. Pombo***, 26 A.3d 1155, 1157 (Pa.Super. 2011) (quoting ***Commonwealth v. Bowers***, 25 A.3d 349, 352 (Pa.Super. 2011), *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012)).

Section 9714 provides, in pertinent part, as follows:

### § 9714. Sentences for second and subsequent offenses

**(a) Mandatory sentence.—**

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

(2)  Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required.  Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

**(a.1) Mandatory maximum.—**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

\* \* \*

**(d)  Proof at sentencing.—**Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.  The applicability of this section shall be determined at sentencing.  The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender.  If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender.  The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose

sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

**(e) Authority of court in sentencing.—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsections (a) and (a.1) or to place such offender on probation or to suspend sentence.** Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

42 Pa.C.S.A. § 9714(a)-(a.1), (d)-(e) (some emphasis added).

In **Alleyne**, the United States Supreme Court expressly held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt, but the **Alleyne** Court also recognized "a narrow exception to this general rule for the fact of a prior conviction." **Alleyne, supra** at ___, 133 S.Ct. at 2160 n.1, 186 L.Ed.2d at ___ (citing **Almendarez–Torres v. United States**, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)).

Instantly, Appellant's kidnapping conviction constituted a crime of violence under Section 9714. At sentencing, the Commonwealth presented evidence of Appellant's prior conviction for robbery, which also constituted a

crime of violence.  Significantly, Appellant conceded that the prior robbery conviction constituted a "first strike."  **See** *Pro Se* Amendment to Counseled Post-Sentence Motions, filed 6/24/14, at 8 (stating: "It is therefore clear that prior to this crime [Appellant] had only one strike for a conviction of a crime of violence").  On this record, Section 9714 mandated that the court impose a mandatory minimum sentence.  **See** 42 Pa.C.S.A. § 9714(e).  Regarding Appellant's reliance on **Alleyne**, its holding does not apply to mandatory minimum sentences based on the fact of a prior conviction.  **See Alleyne, supra**.

Appellant correctly recognizes, however, that the amended sentencing order and the criminal docket entries list the kidnapping sentence as one hundred twenty to one hundred forty months' imprisonment.  Because the maximum sentence does not equal twice the minimum sentence, the sentence violates Section 9714(a.1); and Appellant's kidnapping sentence is illegal.  We acknowledge that the illegal sentence might be attributable to a mere scrivener's error.  Nevertheless, we leave any sentence correction to the trial court; otherwise, we risk invading the trial court's sentencing intentions.  **See Commonwealth v. Bartrug**, 732 A.2d 1287 (Pa.Super. 1999), *appeal denied*, 561 Pa. 651, 747 A.2d 896 (1999) (stating sentencing error in multi-count case requires that all sentences for all counts be vacated so court can restructure entire sentencing scheme).  **See also Commonwealth v. Goldhammer**, 512 Pa. 587, 593, 517 A.2d 1280, 1283

(1986), *certiorari denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987)) (stating, "When a defendant challenges one of several interdependent sentences, he, in effect, challenges the entire sentencing" scheme; if appellate court alters overall sentencing scheme, then remand for resentencing is proper).  Accordingly, we affirm Appellant's convictions, but we vacate the judgment of sentence in its totality and remand for resentencing.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/22/2015

COMMONWEALTH OF        : IN THE COURT OF COMMON PLEAS
PENNSYLVANIA              : DAUPHIN COUNTY, PENNSYLVANIA
                                 :
            v.                  : NO. 4317 CR 2013
                                 :
WALTER KEITH SAWYER a/k/a KEITH    :
WALTER SAWYER a/k/a WALTER        : CRIMINAL MATTER
SAWYER a/k/a KEITH SAWYER          :

## TRIAL COURT MEMORANDUM OPINION AND ORDER

Presently before the Court is the post-sentence motion of Keith Walter Sawyer (hereinafter "Defendant") from the judgment of sentence entered by this Court following a jury trial on April 21-22, 2014.

### Procedural History

Defendant was charged with kidnapping[1], unlawful restraint[2], false imprisonment[3], unlawful contact with a minor[4], criminal attempt[5], open lewdness[6], false identification to law enforcement[7] and defiant trespass. He was found guilty of kidnapping, unlawful contact with a minor and false identification to law enforcement.

He was immediately sentenced to 25-50 years SCI on the kidnapping charge. Five to ten years concurrent with Count I on the unlawful contact charge and one to two years for the false identification charge.

Defendant's attorney, Amanda Batz of the Public Defenders' Office, filed a timely post-sentence motion first requesting a modification of sentence with regard to the false identification charge and second requesting a new trial or arrest of judgment as the verdict was against the

---

[1] 18 Pa.C.S.A. § 2901 (a)(1),(2)
[2] 18 Pa.C.S.A. § 2902(a)(2)
[3] 18 Pa.C.S.A. § 2903(a)
[4] 18 Pa.C.S.A. § 6318(a)(2)
[5] 18 Pa.C.S.A. § 901
[6] 18 Pa.C.S.A. § 5901
[7] 18 Pa.C.S.A. § 4914(a)

37 -14

1

weight of the evidence. Prior to this Court ruling on that motion, Defendant filed a Motion for a *Grazier* hearing indicating that he wished to proceed *pro se*. This Court granted the *Grazier* hearing request and held a video hearing during which Defendant was apprised of his right to counsel and chose to waive it. Further, at that hearing, this Court did modify the sentence with regard to the false identification charge.

Defense counsel withdrew as requested and Defendant filed an "Amendment to Omnibus Post-Sentence Motions". At this time we address both the original Post Sentence Motion and the Amendment.

### Factual Background

Sergeant Michael Schmidt's Testimony

Sergeant Michael Schmidt, of the State Capitol Police Department, explained that the Capitol Police have statewide jurisdiction and protect state employees and state property. (Notes of Testimony Jury Trial April 21-22, 2014[8], 22). He indicated they back up the Harrisburg police whenever they are busy. (N.T. 22). The State Street Bridge is part of their jurisdiction. (N.T. 23). Underneath the Bridge is parking for state employees and the police patrol the area pretty heavily because it is rather secluded and there can be illegal activity there. (N.T. 25-27).

On December 15, 2012, Schmidt was patrolling the area when he saw the defendant's car under the bridge. (N.T. 28-29). Defendant and a white female were in the back seat of the car; Defendant attempted to block Schmidt's view of the interior and it appeared to Schmidt that the female was trying to pull her pants up. (N.T. 30-31). Schmidt made contact with the female and discovered she was travelling from Indianapolis to Hazleton with Harrisburg as a layover. (N.T. 33). She said the candy machines weren't working at the Harrisburg station and Defendant approached her and offered to take her to a gas station for food. (Id.) The victim told him that

---

[8] Hereinafter N.T.

2

after getting the car, Defendant told her if she did not have sex with him, she would not get the bus to Hazleton. (N.T. 35). She was crying and only became more at ease when she was away from the Defendant. (N.T. 35). The Defendant indicated that he believed the female was older than her actual age. (N.T. 61).

## Victim B.B.'s Testimony

She is 17 years old, and was 16 years old at the time of the incident (N.T. 70, 71). She said that on her layover in Harrisburg, she was outside the bus/train station smoking a cigarette when a man approached her and they started talking. (N.T. 74). She told him she was hungry and he offered to take her to a gas station for food to which she agreed. (Id.). They got in the car and he drove her to under the bridge where he told her to have sex with him or she would not make the bus. (N.T. 74-75). She was afraid that she would miss her bus and be lost and along in Harrisburg, a city with which she is not familiar. (Id.). She thought she had no other choice so she climbed into the back seat with him. (N.T. 78). The Defendant unbuttoned her pants and she pulled them partway down her legs. (N.T. 80). She was scared and there was no one around who would hear her if she screamed for help. (N.T. 81). He began to pull down her pants when Sgt. Schmidt arrived. (N.T. 79). Sgt. Schmidt took her away from the Defendant and started to ask her what happened. She was frantic, crying hysterical and afraid of the Defendant. (N.T. 83).

B.B. testified that she was not sure what to do in the situation she was in, nor was she ever told how to handle such a situation. (N.T. 104-105). She was scared of the Defendant because he is bigger and she was physically afraid of him. (N.T. 105).

On cross-examination, B.B. recalled that they did in fact go to a gas station before going under the bridge. (N.T. 93). The Defendant never told her not to get out of the car, he never told

her she was not allowed to leave, nor did he ever physically restrain her. (N.T. 97). She also admitted that she had marijuana in her bag, but denied having it in the car with her. (N.T. 94).

B.B. was recalled and testified that she never told Defendant her age. (N.T. 148).

### Officer Nicole Herb's Testimony

She has been an officer with the Capitol Police since 1996 and has experience interviewing or making contact with young victims or witnesses of all sorts of crimes – domestic violence, sexual assault, DUIs etc. (N.T. 112-113). On December 15, 2012, she was dispatched to back up Sgt. Schmidt. (N.T. 113). Schmidt asked her to watch the male he had been speaking with while he spoke with the female around the corner. (N.T. 115). By Officer Herb's estimation, the female was about 15; and her pants were unbuttoned and sort of rolled down. (Id.).

Officer Herb testified that they always separate the victim from the perpetrator because they are scared and will not speak freely if they have someone staring at them and listening to what they say. (N.T. 116). B.B. was scared, crying and upset and said several times she wanted to go home. (N.T. 117). Officer Herb transported B.B. to Harrisburg Hospital to see a SAFE nurse and possibly get a rape kit done. (N.T. 118). B.B. and Officer Herb spoke about why B.B. was not at home and her personal life. B.B. was upset the whole time, probably three to four hours. (N.T. 119).

B.B. told Officer Herb that she had been at the bus station smoking a cigarette when the Defendant approached her. (N.T. 120). She told him she was hungry and he offered to take her to a gas station. (Id.). They went to the gas station where she bought a candy bar and then he took her under the bridge. (Id.). He stopped, backed in and told her to get in the back seat where he unzipped her pants and started to take them off. (Id.).

4

She testified that the Defendant said he thought B.B. was 19 years old. (N.T. 124).

Officer Herb was recalled on direct. She testified that the Defendant told her that B.B. said she was 19 and that he had needs and as long as the girl was legal he needed someone to fulfill his needs. (N.T. 145).

## Officer David DeLellis's Testimony

Officer David DeLellis, of the Capitol Police, started to inventory the vehicle as it was going to be towed. (N.T. 129). Officer DeLellis indicated that there were ashes all over the vehicle and there was a duffel bag with folded clothing in the back of the vehicle. (N.T. 129). He then transported the Defendant back to the station for processing. (N.T. 133-134). At the station, the Defendant demanded a phone call and Officer DeLellis explained he was not entitled to one until Officer Schmidt authorized it. (N.T. 134-135). Further, he gave the Defendant his Miranda warnings because the Defendant was still demanding a call and claiming he had a right to a phone call. (N.T. 135). The Defendant continued to speak to Office DeLellis after these warnings. (N.T. 136). The Defendant said he didn't use any force or take the girl and the she carried luggage to his car. (Id.). Officer DeLellis explained to him that he did not need to talk and the Defendant said he understood but continued to make statements. (Id.). Specifically he said "she didn't fuck me for no candy bar" and that she had told him she was 19. (N.T. 136-137). Officer DeLellis saw B.B. on the day of the incident and in his training and experience thought she was about 15. (N.T. 137).

## Detective Dennis Woodring's Testimony

Detective Woodring of the District Attorney's Office is the coordinator of the county forensics team. (N.T. 155). In December 2012, he was asked to look for bodily fluids in a vehicle used in a sexual assault case. (N.T. 156). In this case, they used an alternate light source

5

to determine if bodily fluids were present in the car. (N.T. 156). There was an area on the seat that was identified and cut out and sent for analysis. (N.T. 156). It was his understanding that the results of that testing were negative. (N.T. 157).

## Discussion

In his original post sentence motion, Defendant first requests a modification of his sentence with regard to the false identification charge. False identification to law enforcement is a third degree misdemeanor and the statutory maximum is one year. We granted this modification.

Next, he requests a new trial or arrest of judgment as the verdict was against the weight of the evidence. Per his motion, the appearance and demeanor of the victim at the time of the incident demonstrates mistake of age and that her decision to go with him voluntarily precludes kidnapping. Thus he argues the kidnapping and unlawful contact verdicts were contrary to the weight of the evidence so as to shock one's sense of justice.

"It is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded to the evidence produced. The factfinder is free to believe all, part or none of the evidence." Commonwealth v. Graham, 81 A.2d 137 (2013).

> Evidence will be deemed sufficient to support a verdict when it established each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt...A motion for new trial on the grounds that the verdict is against the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner...A new trial should not be granted because of a mere conflict in the testimony or because a judge on the same facts would have arrived at a different conclusion....The role of the trial judge is to determine that notwithstanding the all the facts, certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the facts is to deny justice.

6

Commonwealth v. Widmer, 560 Pa. 308 (2000)

A trial court should award a new trial on grounds that the verdict is against the weight of evidence only when the verdict is so contrary to evidence as to shock one's sense of justice and make award of new trial imperative, so that right may be given another opportunity to prevail. Commonwealth v. Cruz-Centeno, 668 A.2d 536, 447 Pa. Super. 98 (1995), appeal denied 676 A.2d 1195, 544 Pa. 653, habeas corpus denied 1997 WL 16626, affirmed 142 F.3d 427.

In the present case, the jury, as the factfinder, determined that there was sufficient evidence to convict Defendant of kidnapping and unlawful contact with a minor.

Kidnapping is defined as unlawfully removing another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions: (1) To hold for ransom or reward, or as a shield or hostage or (2) To facilitate commission of any felony or flight thereafter. (18 Pa.C.S.A. § 2901). In this case, the issue is whether B.B. was unlawfully removed from where she was found. B.B. admits that she initially agreed to go with Defendant to get food at a gas station. However, she did not testify that she agreed to go under the South Street Bridge. The jury was free to believe her testimony that she only agreed to go to the gas station and was afraid when he took her under the bridge.

The jury's decision does not shock the conscience of the court as there is ample testimony from the victim and from the various officers who were at the scene that she was not under the bridge voluntarily. Just because she initially agreed to go with the Defendant to a public place does not mean she agreed to be taken to a hidden location in a city she was unfamiliar with.

7

"A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth: (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses)." 18 Pa.C.S.A. § 6318.

In his post sentence motion, Defendant claims that the victim told him she was 19 years old. Indeed, throughout the trial the officers testified that he told them she told him she was 19. Conversely, the victim testified that she never told the Defendant her age. Further, the officers all testified that they believe the victim to be around the age of 15 based on her appearance.

As the Pennsylvania Supreme Court said in Widmer, "A new trial should not be granted because of a mere conflict in the testimony." Based on the testimony, it is clear that there is a conflict as to whether B.B. told the Defendant her age or not. However, the jury chose to believe that she did not and that based on her appearance, the Defendant should have known she was under age.

While there were discrepancies in B.B.'s testimony, the jury is the ultimate determiner of credibility and they chose to believe B.B.'s testimony.

In his Amendment to Omnibus Post-Sentence Motions, Defendant raises six (6) issues.

<u>Lack of subject matter jurisdiction</u>

"Subject matter jurisdiction speaks to the competency of a court to hear and adjudicate the type of controversy presented. *Commonwealth v. Bethea,* 574 Pa. 100, 828 A.2d 1066, 1074 (2003)." <u>Commonwealth v. Seiders</u>, 2010 PA Super 194, 11 A.3d 495, 496 (Pa. Super. Ct. 2010).

"[A]ll courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." Commonwealth v. Bethea, 574 Pa. 100, 113, 828 A.2d 1066, 1074 (2003)

Defendant argues that this Court lacks subject matter jurisdiction as he was arrested without a warrant and there was no preliminary arraignment. As this is a Court of Common Pleas, we have subject matter jurisdiction over all cases arising under the crimes code.

Defendant was arrested on December 12, 2012, and charged with Escape. He was not charged with the above-captioned crimes until May 9, 2013. At that time, Sergeant Smith requested a warrant for Defendant's arrest. Defendant had been transported to SCI-Retreat to serve his sentence on the Escape charge. The Honorable Magisterial District Judge Stewart issued notice of the charges to Defendant via summons and set a bail hearing and a preliminary hearing date of June 26, 2013. Upon filing of the charges, the issuing authority should have issued the Commonwealth's requested warrant of arrest; however, Defendant was provided with notice of the June hearing and at that hearing he was provided with all the procedural rights he would have been afforded at a preliminary arraignment. That is, he was given a copy of the criminal complaint requesting a warrant for his arrest, notice of his right to secure counsel, notice of his right to waive the presence of counsel, notice of his right to a preliminary hearing and his right to have bail set. Defendant's substantive rights were maintained and Defendant failed to raise any procedural issues prior to his preliminary hearing.

As the Commonwealth notes, Defendant fails to raise any prejudice he suffered as a result of the procedural history of the case. He was never unlawfully detained nor deprived of any rights.

Commonwealth v. Abdul-Salaam, 678 A/2d 342, 349 (Pa. 1996) indicates that any issue concerning a defect in the affidavit is rendered moot by a magisterial district court's finding of a

prima facie case at a preliminary hearing. A prima facie case was found at his preliminary hearing and he was provided with all his substantive procedural rights at the June 26, 2013 hearing.

### Court error in allowing charges not presented at the preliminary hearing nor amended by formal arraignment to proceed to trial

Defendant contends that the Unlawful Contact with a Minor – Open Lewdness charge was never presented at the preliminary hearing, nor was it formally amended to the Defendant, thus it was improperly placed before the jury.

Defendant was actually charged with Unlawful Contact with a Minor relating to the charge of Indecent Assault. That Unlawful Contact charge was in the original Criminal Information and the Defendant had been notified of the Commonwealth's intent to introduce the cognate offense prior to the filing of the information through the Charging Memorandum filed on or about October 17, 2013.

Per Pennsylvania Rule of Criminal Procedure 560(B)(5), the Commonwealth is permitted to charge in a criminal information "the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint." In this case, kidnapping and criminal attempt to commit indecent assault were including the complaint. Kidnapping includes an element that the victim is under 18 years of age. 18 Pa.C.S.A. §2901(a.1)(2). Criminal attempt to commit indecent assault, 18 Pa.C.S.A. § 901 and 18 Pa.C.S.A. § 3126(a)(1) include an essential element that the defendant attempted to indecently contact the victim for the purpose of sexual gratification. The crime of unlawful contact with a minor, 18 Pa.C.S.A. § 6318(a)(2) includes as essential elements that the defendant make contact with a victim *under 18 years of age* and that the contact be made with *the intent to commit a sexual offense*. The charged offense

10

of kidnapping and criminal attempt to commit indecent assault implicate all the essential elements of unlawful contact with a minor, thus it is a cognate offense and was properly charged.

Once a defendant has been to trial and been found guilty of a crime, any defect in the preliminary hearing is immaterial. Commonwealth v. Jacobs, 640 A.2d 1326 (Pa.Super. 1994). Thus, Defendant is not entitled to dismissal of this charge.

### A Rule 600 violation

Next Defendant argues that Rule 600 – Prompt Trial was violated. He contends that the defense never continued the case thus the time from arrest to trial was greater than 365 days.

Defendant was arrested on December 12, 2012 on the escape charge. He was not charged with the above captioned offenses until May 9, 2013. He proceeded to trial on April 21, 2014 – a total of 348 days. This is within the 365 day time limit in Pennsylvania Rule of Criminal Procedure 600. On February 18, 2014, Attorney Amanda Batz requested a continuance and again on March 24, 2014, Attorney Batz waived Rule 600 again until April 21, 2014, for a total period of 55 days which would not count towards the 365 day limit. No violation of Rule 600 occurred.

### Court error in proceeding to trial when the Commonwealth delay denied Defendant due process and error in permitting conviction when Defendant is innocent

Defendant contends that he was never informed of the charges against him. We find this difficult to accept as he had three dates before MDJ Stewart between the filing of the criminal complaint on May 9, 2013 and formal arraignment on November 22, 2013. He was provided with a copy of the criminal complaint on June 26, 2013. Further on September 11, 2013, MDJ Stewart held a preliminary hearing at which the victim testified and the court held the charges for the Court of Common Pleas. He was present and would have been made aware of the allegations at that point.

11

Defendant then contends that he met with Chief Detective John Goshert on November 26, 2013, and asked him to the video from the bus terminal, train station and Hess Express Gas Station as he believed it would prove his innocence. Defendant indicates in his motion that Chief Goshert attempted to retrieve the videos but was told they were destroyed and that the delay resulted in a manifest miscarriage of justice and denied him his right to an adequate defense.

The Commonwealth response indicates that while the meeting did take place and Chief Goshert did attempt to obtain the videos he was unable to for various reasons. First, the bus terminal video system was inoperable at the time of the incident. Officer Schmidt learned of this during his initial investigation, thus no prejudice was suffered by the Defendant as no video ever existed. Next, the train station and Hess station videos were unavailable for the date in question. There is no indication as to why the videos are unavailable and the Commonwealth avers that any video would only provide *de minimus* circumstantial evidence as the victim consistently indicated she willing entered defendant's car at the bus/train station. She also willingly entered the car at the gas station, but the unlawful detention occurred when defendant transported her from the gas station to underneath the State Street Bridge.

We agree with the Commonwealth that even if there were video for the date in question of the areas Defendant requested, the evidence would be *de minimus* and , even if there were error here, dismissal of charges would be an inappropriate remedy.

### Illegal sentence under the Recidivist Statute

The Defendant was sentenced under 42 Pa.C.S.A. § 9714(a)(1) which indicates that "Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a

12

crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence."

While the defendant has an extensive criminal history including several felony convictions, in the context of sentencing he does not have two crimes of violence that would enhance his sentence per 42 Pa.C.S.A § 9714. Thus his post sentence motion is granted as to his request to vacate the sentence and resentence him pursuant to 42 Pa.C.S.A § 9714(a) to a term of at 120-240 months of incarceration in a State Correctional Institute at Count 1.

### Verdict against the weight of the evidence

This claim was raised in the original post-sentence motion and addressed above; however, the Defendant revisits this contention with different arguments in his Amendment, therefore we address it again here.

Defendant argues that in order to be found guilty of Unlawful Contact with a Minor, there must be sufficient evidence to convict the defendant of the underlying offense. In his case, he indicates Open Lewdness. However, the Commonwealth contends that the underlying charge is also Criminal Attempt- Indecent Assault.

The Commonwealth says that 18 Pa.C.S.A. § 6318(a) only requires that the Commonwealth prove that the Defendant intended to commit one of the offenses, not that sufficient evidence is present to convict him of the offense. "In other words, a defendant need not be successful in completing the purpose of his communication with a minor in order to be found guilty of § 6318(a). For example, the actual rape of a child is not an element of the crime under § 6318(a); rather a defendant is guilty if he *contacts* a minor for the purpose of engaging in that

13

prohibited behavior." <u>Commonwealth v. Reed</u>, 9 A.3d 1138, 1146 (Pa. 2010) (Court's emphasis), *citing* <u>Commonwealth v. Morgan</u>, 913 A.2d 906, 910 (Pa. Super. 2006), *see also* <u>Commonwealth v. Evans</u> 909 A.2d 303 (Pa. 2006). "Defendant need not successfully complete purpose of contact or communication with minor; once contact or communication for purpose of engaging in prohibited activity occurs, "crime of unlawful contact with a minor has been completed." <u>Commonwealth v. Evans</u>, 901 A.2d 528, 537 (Pa. Super. 2006) *appeal denied* 909 A.2d 303 (Pa. 2006).

The jury, as fact finder, was free to believe any all or none of the evidence and testimony. They chose to believe enough evidence and testimony so as to convict the Defendant of Unlawful Contact with a Minor as discussed *supra*.

For these reasons, we DENY the motion for arrest of judgment or new trial but GRANT the motion as to his request to vacate the sentence and resentence him pursuant to 42 Pa.C.S.A. § 9714(a) to a term of 120 – 140 months incarceration in a State Correctional Institute at Count 1. All other aspects of his sentence remain the same.

Respectfully submitted:

_____
Deborah E. Curcillo, Judge

Dated: 8-6-14

*Distribution:* 8-7-14 @ 11:59
Hon. Deborah E. Curcillo
Chris Jason Esq., Dauphin County District Attorney's Office — IO
Walter Keith Sawyer, #CB-2834; SCI-Retreat, 660 State Rt 11, Hunlock Creek, PA 18621 — Mail
Clerk of Courts

14